```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND
```

OLALEKAN OLAREWAJU            :

                                    :

   v.                               : Civil Action No. DKC 21-3250

                                    :

ALLIED UNIVERSAL              :

                                    :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this *pro se* employment discrimination case is a motion to dismiss the operative complaint filed by Defendant Allied Universal. (ECF No. 6). In opposition to Defendant's motion to dismiss, Plaintiff Olalekan Olarewaju attempts to move for leave to amend. (ECF Nos. 17; 19). The issues have been briefed, and the court now rules, no hearing being necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted in part and denied in part and the motion for leave to amend will be denied.

**I.   Background**[1]

    **A.   Facts Alleged in Operative Complaint**

Mr. Olarewaju was born in Nigeria and moved to the United States. He worked for Allied Universal as a security guard until

---

[1] The facts outlined here, which are set forth in the operative complaint, an attachment thereto, and a proposed amended complaint, are construed in the light most favorable to the Plaintiff. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (holding that attached documents "integral to

he was terminated on April 16, 2021.  He had been employed by predecessor contractors before Allied took over in June 2019.  He alleges that, from the transition to Allied in June 2019, he had a problem with his supervisor Major Sam Robinson, who favored Black Americans.  He gave Black Americans more favorable postings and he never disciplined the Black American who relieved Mr. Olarewaju at the end of his shift, Ms. Ashley Parker, for being late and not showing up at all.

On April 14, 2021, Mr. Olarewaju was late to work because he had been pulled over by police.  After he arrived, Mr. Robinson allegedly told Mr. Olarewaju that he was a "dumb African, that we are not smart people," called him a bastard, and, in Mr. Olarewaju's words, told him he would "come back after he might have pull off his uniform to beat [him] up physically."  (ECF No. 1, at 6).  Mr. Olarewaju reported the incident and was then told by Mr. Robinson to report to the regional office on April 19.  Upon arrival, Mr. Olarewaju received a termination letter dated April 16.

    **B.**    **Initiation of this Action and Motions Practice**

Mr. Olarewaju filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 15, 2021, checking the box for national origin discrimination, and was issued

---

the complaint and authentic" may be considered on a motion to dismiss).

a right to sue letter about two weeks later, on September 27. (ECF No. 1-1). He then filed this action without legal representation on December 21, 2021. He asserts claims for national origin discrimination and a hostile work environment under Title VII, 42 U.S.C. § 2000e *et seq.*, the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't § 20-601 *et seq.*, and Montgomery County Code § 26-6.[2] He appears to advance these claims primarily based on the verbal abuse, threat of physical violence, and his termination. (*See* ECF No. 1, at 9). He also checked the box for race discrimination, filled in a blank for color discrimination, and checked boxes for unequal conditions of employment as a means of discrimination, and retaliation.

Defendant moved to dismiss the complaint, contending that any claim other than those for discriminatory discharge based on national origin discrimination and harassment had not been exhausted, and that Plaintiff failed to state a claim properly for those two potentially exhausted claims. Mr. Olarewaju's response appeared to form a request to amend his complaint. (ECF No. 17). Plaintiff was advised that, if he wished to file an amended complaint, he needed to file a complete proposed amended complaint. He did so. (ECF No. 19). Defendant opposes allowing Mr. Olarewaju

---

[2] The relevant employment discrimination provision is Montgomery County Code § 27-19.

to amend, contending that the amended complaint still fails to state a claim.

### C. Facts Alleged in Proposed Amended Complaint

The proposed amended complaint does little to alter the picture presented in the operative complaint. It augments some minor details, leaves out at least one key detail, and otherwise largely restates the same assertions. It is narrower because it does not include the statement by Mr. Robinson that Mr. Olarewaju was a "dumb African" alleged in the operative complaint. In addition, it asserts only Title VII national origin discrimination and hostile work environment claims (despite stray indications that he relies on race, color, and religion). Most of the added detail is biographical. The amended complaint does more clearly indicate that from the outset Mr. Robinson wouldn't listen to Mr. Olarewaju, "talk[ed] down to him in a derogatory manner," shouted, and told him that he lacked common sense. (ECF No. 19, at 2). It also now contends that Mr. Robinson coordinated with a property manager to prevent Mr. Olarewaju from parking his car in a nearby lot. Otherwise it simply reasserts the remaining details in the operative complaint. He alleges that Ms. Parker was treated differently despite being late all the time and that when he was late on April 16 (rather than April 14), Mr. Robinson cursed him, called him a bastard, and threatened to beat him up.

As discussed further below, the omissions from the proposed amended complaint are more harmful to Mr. Olarewaju's case than any additional detail is helpful.  Because Mr. Olarewaju proceeds without a lawyer, the court declines his self-defeating request for leave to amend.  For that reason, only the factual allegations in the original complaint will be used to resolve Allied Universal's motion to dismiss.

**II. Standard of Review**

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint.  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  "[T]he district court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in plaintiff's favor."  *Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021).  A plaintiff's complaint need only satisfy the standard of Fed.R.Civ.P. 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief[.]"  A Rule 8(a)(2) "showing" still requires more than "a blanket assertion[] of entitlement to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007), or "a formulaic recitation of the elements of a cause of action[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that defendant is liable for the misconduct alleged." *Mays*, 992 F.3d at 299-300 (quoting *Iqbal*, 556 U.S. at 663).

The pleadings of unrepresented parties are liberally construed and held to a less strict standard than those drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Liberal construction means that courts will read the pleadings to state a valid claim to the extent that it is possible to do so from the facts available; it "does not mean overlooking the pleading requirements[.]" *See Bing v. Bravo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020) (citation omitted); *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). Where an unrepresented plaintiff's complaint must be dismissed, courts should provide "notice of the deficiencies" so that the plaintiff can "use[] the opportunity to amend effectively." *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

**III. Analysis**

Allied Universal construes Mr. Olarewaju's operative complaint to assert claims for: (1) race and color discrimination, (2) retaliation, (3) national origin discrimination based on (a) unequal employment conditions and (b) discharge, and (4) hostile work environment. It argues that Mr. Olarewaju did not exhaust claims (1), (2), and (3)(a) and that he fails adequately to state claims (3)(b) and 4.

### 1. Race and Color Discrimination, Retaliation, and National Origin Discrimination by Unequal Conditions

Title VII requires a plaintiff to file a charge of discrimination with the EEOC before filing suit in federal court. 42 U.S.C. § 2000e-5(e)(1), (f)(1). The purpose of this exhaustion requirement is to put employers on notice to potential misconduct and afford them the opportunity to remedy it with the complaining employee more quickly and efficiently than litigation allows. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). "If a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent civil suit." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000) (citation omitted). But a suit may not present entirely new factual bases or entirely new theories of liability from those set forth in the initial EEOC charge. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963-64 (4th Cir. 1996).

Mr. Olarewaju did not exhaust any of the challenged claims. He did not check the box for race or color discrimination or for retaliation in his administrative charge. In addition, the description in his charge did not mention his race or color or that he complained about unlawful conduct. *See Miles v. Dell, Inc.*, 429 F.3d 480, 491-92 (4th Cir. 2005) (holding plaintiff failed

7

to exhaust when she "did not check the retaliation box on her charge form, and the narrative explaining her charge made no mention of retaliation"). To the extent Mr. Olarewaju asserts claims for national origin discrimination not grounded in his termination, that claim too was not exhausted because the EEOC charge mentions only that Mr. Olarewaju was discharged and faced harassment.

Defendant's motion to dismiss any race and color discrimination and retaliation claims, or any national origin discrimination claims not grounded in termination, will be granted.[3]

### 2. National Origin Discrimination by Discharge

"[T]o determine what the plaintiff must plausibly allege at the outset of a lawsuit, we usually ask what [elements] the plaintiff must prove in the trial at its end." *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S.Ct. 1009, 1014 (2020). In employment discrimination cases, a plaintiff must plead that (1) his employer took an adverse employment action against

---

[3] While not discussed by the Defendant, claims under the Maryland Fair Employment Practices Act also require exhaustion. *See Johnson v. United Parcel Serv., Inc.*, No. 14-cv-4003-RDB, 2015 WL 4040419, at *6 (D.Md. 2015). Maryland County Code claims have the same requirements. *Magee v. DanSources Tech. Servs., Inc.*, 137 Md.App. 527, 549 (2001). Any race and color discrimination or retaliation claims, or national origin claims grounded in unequal conditions, that Mr. Olarewaju asserts under state or county law will therefore also be dismissed.

him, (2) because of his protected status. *See* 42 U.S.C. § 2000e-2(a)(1); *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015). "An employment discrimination plaintiff need not plead a prima facie case of discrimination to survive a motion to dismiss because the prima facie case is an evidentiary standard, not a pleading standard." *McCleary-Evans*, 780 F.3d at 584 (cleaned up) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510, 515 (2002)).

Allied Universal argues that Mr. Olarewaju has not pleaded enough to support an inference that he was fired because of his national origin. To allege that an employer acted "because of" an employee's protected status, there must be "some connective thread between the alleged mistreatment and the protected status." *See Gough v. Rock Creek Sports Club*, No. 19-cv-3533-PJM, 2021 WL 795447, at *2 (D.Md. Mar. 2, 2021). The most direct way to support an inference of discriminatory motive is to allege statements indicative of discriminatory animus that have a relatively close connection to the alleged adverse event. *See Johnson v. United Parcel Serv., Inc.*, 839 F.App'x 781, 783 (4th Cir. 2021) (discussing statements that reflect improper attitude in retaliation context) (citing *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 300 (4th Cir. 2010)). Plaintiffs also commonly point to comparatively better treatment of similarly situated individuals outside their protected class. *Swaso v. Onslow Cnty. Bd. of Educ.*,

9

698 F.App'x 745, 748 (4th Cir. 2017) (unpublished) (citing *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545-46 (4th Cir. 2003)).

Mr. Olarewaju's operative complaint successfully alleges that Allied Universal's employee, Mr. Robinson, either fired Mr. Olarewaju, or facilitated his termination, because he was Nigerian. Most importantly, Mr. Olarewaju alleges that Mr. Robinson called him a bastard and a "dumb African." (ECF No. 1, at 6). Mr. Robinson was his supervisor and he made these comments during his last encounter with Mr. Olarewaju before he was fired. Taken together, improper animosity evident in a comment made to a plaintiff by his supervisor almost immediately before he was fired is enough to plead improper discriminatory animus based on national origin.

Mr. Olarewaju also attempts to support an inference of discriminatory motive through comparison with Ms. Parker. This is a closer call, whether the court were to look to the operative complaint or the proposed amended complaint. Ms. Parker appears to be a similarly situated employee outside his protected class. She was a native-born Black American who held the same position – she replaced Mr. Olarewaju at the end of his shift. He alleges that Ms. Parker was always late and sometimes didn't show up at all but that Mr. Robinson never disciplined her. What's less clear is whether Mr. Olarewaju contends that Allied Universal's stated

10

reason for firing him was that he was late. (The administrative charge recites that he was "accused of abuse.") Absent the alleged statement by Mr. Robinson above, Mr. Olarewaju might have needed to plead more. In discovery, Mr. Olarewaju may pursue evidence of animus both in comments by Mr. Robinson or the comparative treatment of Ms. Parker.

Defendant's motion to dismiss Mr. Olarewaju's Title VII, state law, and Montgomery County claims for national origin discrimination grounded in his discharge will be denied.

### 3. Hostile Work Environment

To state a hostile work environment claim under Title VII, a plaintiff must allege "that the offending conduct (1) was unwelcome, (2) was based on h[is] [protected status], (3) was sufficiently severe or pervasive to alter the conditions of h[is] employment and create an abusive work environment, and (4) was imputable to h[is] employer." *See Ziskie v. Mineta*, 547 F.3d 220, 224 (4th Cir. 2008) (cleaned up) (summary judgment decision).

Defendant argues that Mr. Olarewaju has not pleaded severe or pervasive conduct. Harassment is sufficiently severe or pervasive if it creates an "'environment [that] would reasonably be perceived, and is perceived, as hostile or abusive.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993)). "Th[e] determination is made 'by looking at all the circumstances,'

11

which 'may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris*, 510 U.S. at 23).

Mr. Olarewaju pleads just enough to support an inference of a hostile work environment. "[A]n employee will have a reasonable belief that a hostile work environment is occurring based on an isolated incident if that harassment is physically threatening or humiliating." *Boyer-Liberto*, 786 F.3d at 284. Here, Mr. Olarewaju alleges that, after calling him a bastard and a "dumb African," Mr. Robinson "told [him] he will come back after he might have pull off his uniform to beat me up physically." (ECF No. 1, at6). Although a single physical threat may not rise to the level of extremely serious conduct, it is a close call and Mr. Olarewaju's allegations at least make it plausible that he endured such extreme conduct here. *See id.*

Defendant's motion to dismiss Plaintiff's Title VII, state-law, and Montgomery County claims for hostile work environment will be denied.

12

**IV. Conclusion**

For the foregoing reasons, Defendant's motion to dismiss will be granted in part and denied in part and Plaintiff's motion for leave to amend the complaint will be denied. A separate order will follow.

<pre>
                                    /s/
                         DEBORAH K. CHASANOW
                         United States District Judge
</pre>